UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 19-CV-156

| | |
|---|---|
| CHAD BACON <br><br> **Plaintiff** <br><br> v. <br><br> LEXISNEXIS RISK SOLUTIONS, INC. <br><br> **Defendant** | **COMPLAINT** <br><br> **WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff, Chad Bacon, by and through Counsel, and pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 et seq., N.C. Gen. Stat. § 75-1.1, and North Carolina common law, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES

3. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

4. Chad Bacon ("Plaintiff") is an individual and citizen of the State of North Carolina who currently resides in Iredell County, North Carolina.

5. At all times relevant to this action the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. At all times relevant to this action the Plaintiff was a "consumer" as defined by N.C. Gen. Stat. § 75-50(1).

7. Defendant, LexisNexis Risk Solutions Inc. ("Lexis"), is a "person" as defined in 15 U.S.C. § 1681a(b).

8. Lexis is also a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

9. Lexis is a business entity which regularly conducts business nationally and has its principal office at 1000 Alderman Dr., Alpharetta, Georgia, 30005-4101.

10. Lexis can be reached for service through its Registered Agent, CT Corporation System at 160 Mine Lake Ct, Suite 200, Raleigh, North Carolina 27615-6417.

11. Equifax Information Services, LLC (Equifax) is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

12. Experian Information Solutions, Inc. (Experian) is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

13. TransUnion, LLC ("TransUnion") is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

14. The Consumer Financial Protection Bureau ("CFPB") is an agency of the United States government that was created to assist in the protection of consumer rights pursuant to 12 U.S.C. § 5481, *et seq*.

## FACTUAL ALLEGATIONS

15. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

16. January 25, 2016: The Court of General Sessions of Sullivan County, Tennessee entered a default judgment against Mr. Bacon for $18,863.56 plus interest *in Sofo Foods of Georgia v. Tara, LLC Chad Bacon*, 13-01278-ODE.

17. This entry of default judgment was in error.

18. February 25, 2016: The Court set aside the default judgment.

19. The legal significance of this act was that Mr. Bacon had no judgment against him at that time.

20. After the default judgment was set aside Lexis reported that there was a judgment against Mr. Bacon.

21. That information was inaccurate.

22. Lexis did not report that the judgment was set aside.

23. January 23, 2018: The Court entered an Order of Dismissal with Prejudice in the case.

24. Because there was a Dismissal, there was no judgment in the case and never would be.

25. On March 20, 2018, Mr. Bacon applied for loan with People's Bank ("PB").

26. The loan was for two different developments. Mr. Bacon planned to build two neighborhoods on the properties.

27. During the process PB's loan officer, Ryan Waddle, expressed great interest in the projects for which Mr. Bacon sought loan approval.

28. During this process, PB received all of Mr. Bacon's financial records and history.

29. PB's loan officer told the Plaintiff that he had no problem with Mr. Bacon's past history or ability to repay the loan.

30. At the end of the loan application process, PB pulled Mr. Bacon's credit report

31. May 1, 2018: Ryan Waddle at PB contacted Mr. Bacon by telephone.

32. Mr. Waddle told Mr. Bacon PB would not approve the loan for which Mr. Bacon had applied.

33. Mr. Waddle told Mr. Bacon the reason PB would not approve the credit extension; Mr. Waddle used words to the effect that there were derogatory public records on Mr. Bacon's credit report, and PB was concerned because Mr. Bacon had not told PB about this.

34. Mr. Bacon was shocked because he did not expect to be denied this extension of credit.

35. He asked for the credit report from PB and was denied.

36. April 30, 2018: Mr. Bacon received a letter from Mr. Waddle which stated: "we will not be able to offer you any terms. You had a score of 562, and with your income being speculative from house sales, and the receivable of the last business you sold. [sic]"

37. May 1, 2018: Mr. Bacon called Kati Doig at Safeguard Credit Counseling (Safeguard) in Mooresville to have her pull his report and explain to him what it said.

38. Ms. Doig informed Mr. Bacon of the judgment on the credit report she pulled for him.

39. May 2, 2018: Mr. Bacon called Clerk of Court in Kingsport, Tennessee to inquire about the status of the case and whether there was a judgment on file with the Court.

40. The Clerk informed Mr. Bacon that the case file showed that the case was dismissed.

41. May 9, 2018: Mr. Bacon filed disputes with TransUnion, Experian, and Equifax based on the trade lines which still reported the judgment and some tax liens.

42. With these disputes, Mr. Bacon attached the Order dismissing the case in the Tennessee Court as well as a copy of the credit report showing the judgment still listed.

43. May 10, 2018: Mr. Bacon filed a Consumer Financial Protection Bureau (CFPB) complaint against Lexis, TransUnion, Experian and Equifax.

44. May 10, 2018: Mr. Bacon filed a dispute with Lexis for inaccurate reporting of the judgment on his credit report.

45. May 17, 2018: Mr. Bacon received a response from CFPB stating that Equifax had responded, and Equifax did not publish the judgment at issue or tax liens.

46. According to the CFPB, in response to Complaint # 180510-3132112, Equifax responded that "The disputed tax liens /14013072, /14011121 and judgement" did not currently appear Mr. Bacon's Equifax credit Report.

47. May 17, 2018: Mr. Bacon received a response from the CFPB stating that Experian had responded and stated that the inaccurate information was not being reported on Mr. Bacon's Experian credit report.

48. According to the CFPB, in response to Complaint # 180510-3132113, Experian responded to the CFPB that the disputed items did not appear on Mr. Bacon's personal credit report.

49. May 21, 2018: Mr. Bacon received "Report #2882-1850-92 for 5/17/2018" from Experian. That report demonstrated that Experian did not report the judgment at issue or tax liens.

50. May 22, 2018: Mr. Bacon received a response from CFPB stating that TransUnion had responded, and TransUnion did not publish the judgment at issue or tax liens.

51. According to the CFPB, in response to Complaint # 180510-3131867, TransUnion responded that the judgment at issue and tax liens did not currently appear on Mr. Bacon's TransUnion credit Report.

52. May 23, 2018: Mr. Bacon received "Report #8136018101" from Equifax. That report demonstrated that "the disputed tax liens /14013072, /14011121 and judgment" were currently not reporting on Mr. Bacon's Equifax credit file.

53. June 6, 2018: Mr. Bacon received a response from the CFPB stating that Equifax had responded, and Equifax did not publish the judgment at issue or tax liens.

54. October 2, 2018: Mr. Bacon contacted Kati Doig at Safeguard by telephone and asked her to pull his report again to see if the judgment at issue and liens were still on his credit report.

55. Safeguard pulled a merged report through Factual Data the same day. The judgment was still being reported by Lexis at that time.

56. January 2019: Mr. Bacon contacted Lexis by telephone.

57. During this call Mr. Bacon spoke to an agent named "B. Hope." She gave to Mr. Bacon her employee number as #266105. She would not give any other name.

58. The Lexis agent gave Mr. Bacon his customer number: #12701805.

59. Mr. Bacon asked the Lexis agent to send to him a copy of his dispute reports. The Lexis agent said she could not email the dispute reports, but she could mail them through the U.S. Mail.

60. Mr. Bacon told her his correct postal address. The Lexis agent said the dispute reports would go out in the mail within seven days.

61. Lexis never mailed the dispute reports to Mr. Bacon.

62. February 6, 2019: Again Mr. Bacon contacted Kati Doig by telephone to pull his credit report.

63. Safeguard pulled Mr. Bacon's merged report again through Factual Data on February 13, 2019.

64. The judgment at issue and tax liens were still reporting on his credit file at that time.

65. February 15, 2019: Mr. Bacon contacted Lexis by telephone to request the results from the investigation that Lexis was to be performing concerning his disputes.

66. Lexis did not provide the results of an investigation.

67. February 20, 2019: Mr. Bacon contacted Lexus again by telephone to request the results from the investigation that Lexis was to be performing concerning his disputes.

68. After being left on hold for 32 minutes, a Lexis agent named "Yedah" spoke with Mr. Bacon.

69. The agent would not give any other information or employee number.

70. "Yedah" told Mr. Bacon that he would send the dispute to him in the mail, and he should receive it in seven to ten business days.

71. "Yedah" told Mr. Bacon that he could not email the file because the file was 261 pages and too large to email.

72. The Lexis agent told Mr. Bacon he had to seek supervisor approval to send the file to him.

73. Lexis never sent the results of any investigation to Mr. Bacon.

## **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

74. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

75. Lexis was properly noticed by the Plaintiff that the judgment it was publishing on the Plaintiff's report was in error and did not exist.

76. This notice came directly from the Plaintiff to Lexis, and through Equifax, Experian, TransUnion and the CFPB.

77. Lexis had in its possession or constructive possession all of the information relevant to the Plaintiff that was necessary to determine that the judgment was reported in error.

78. Lexis chose to publish the judgment on the Plaintiff's report when it knew the Plaintiff had no judgment.

79. Upon information and belief, Lexis continues to publish this inaccurate information as of the filing of this complaint.

80. Lexis knows that the information it is reporting about the Plaintiff is inaccurate.

81. Plaintiff contacted Lexis, Equifax, TransUnion, Experian and the CFPB on several occasions to dispute the accuracy of the information being reported about him.

82. Upon information and belief Lexis received notification of this dispute from the Plaintiff, the CFPB, Equifax, TransUnion and Experian as alleged herein.

83. Lexis failed to notice the person who furnished the incorrect information about the judgment that the Plaintiff had disputed that information, pursuant to 15 U.S.C. § 1681i(a)(2)(a).

84. Lexis failed to provide that person with all relevant information regarding the dispute that it received from the Plaintiff, pursuant to 15 U.S.C. § 1681i(a)(2)(b).

7

Case 5:19-cv-00156-KDB-DSC   Document 1   Filed 11/22/19   Page 7 of 10

85. Lexis failed to make the determination that any of the Plaintiff's multiple disputes were frivolous or irrelevant pursuant to 15 U.S.C. § 1681i(a)(3).

86. Lexis never served the Plaintiff notice that it had made any such determination pursuant to 15 U.S.C. § 1681i(a)(3).

87. Despite receiving notices of disputed information, Lexis repeatedly failed to conduct a reasonable reinvestigation of the disputed information pursuant to 15 U.S.C. § 1681i(a)(1).

88. Lexis repeatedly failed to delete or modify the inaccurate information that it reported as it was required to do pursuant to 15 U.S.C. § 1681i(a)(5).

89. Lexis failed to provide Plaintiff with a written notice of the results of any reinvestigation as it was required to do pursuant to 15 U.S.C. § 1681i(a)(6).

90. Because Lexis had actual knowledge that Plaintiff did not have a judgment on his record and failed to conduct a reasonable investigation or reinvestigation of the accuracy of its reporting of this adverse information, Lexis showed an intentional and reckless disregard for Plaintiff's rights under the FCRA.

91. The information that Lexis published was false, and Lexis knew it was false.

92. This information showed the Plaintiff to be an irresponsible consumer when he was not.

93. Lexis's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was misleading in such a way and to such an extent that it could be expected to have an adverse effect on Plaintiff. *See Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

94. As a direct and proximate result of Lexis' willful and/or reckless refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage as described herein,

8

Case 5:19-cv-00156-KDB-DSC   Document 1   Filed 11/22/19   Page 8 of 10

entitling him to an award of actual damages in amounts to be proved at trial, plus attorney fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

95. Lexis's indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and reckless, willful and wanton misconduct, calling for an assessment of punitive damages against Lexis, pursuant to 15 U.S.C. § 1681n(a)(2).

## NORTH CAROLINA COMMON LAW CLAIM DEFAMATION

96. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

97. Lexis has defamed the Plaintiff pursuant to North Carolina common law.

98. Lexis continued to report that the Plaintiff had a judgment against him when he did not.

99. Lexis repeatedly published false information about the Plaintiff.

100. This false information was defamatory.

101. This information was published to a third person.

102. This information tends to subject the Plaintiff to ridicule, contempt or disgrace.

103. These actions were done with malice.

104. In an action for libel or slander *per se*, malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury. *See Andrews v. Elliot*, 109 N.C.App. 271, 274 (1993).

105. The Plaintiff was injured by these acts economically and through unwarranted distress, embarrassment, humiliation and emotional turmoil.

## DEMAND FOR JURY TRIAL

106. Plaintiff exercises his right to a trial by jury on all issues so triable.

9

Case 5:19-cv-00156-KDB-DSC   Document 1   Filed 11/22/19   Page 9 of 10

**WHEREFORE,** the Plaintiff respectfully requests the following relief from the Court:

1. Compensatory damages against the Defendant in an amount to be determined at trial that will fairly and reasonably compensate him for the emotional distress, aggravation, annoyance, humiliation, and financial hardship suffered as a result of the Defendant's unlawful acts;

2. Actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o;

3. Statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n;

4. Punitive Damages pursuant to N.C. Gen. Stat. § 1D; and,

5. For such further and relief that this Court may deem just, equitable and proper.

**TODAY** is November 22, 2019.

**COLLUM & PERRY**

By:  */s/ M. Shane Perry*
M. Shane Perry
NC Bar Number: 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile:  704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*